**Matthew S. Parmet** (CSB # 296742)
matt@parmet.law
**PARMET PC**
340 S. Lemon Ave., #1228
Walnut, CA 91789
phone   713 999 5228
fax       713 999 1187

**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| JASON ALTENHOFEN, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br><br>vs.<br><br>SOUTHERN CALIFORNIA GAS COMPANY,<br><br>                         Defendant. | Case No. 2:20-cv-01723<br><br>**Plaintiff's Original Collective and Class Action Complaint for Damages**<br><br>1. **Failure to pay overtime compensation (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*)**<br>2. **Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders)**<br>3. **Failure to provide compensation for missed meal and rest periods (CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders)**<br>4. **Violations of record keeping requirements (CAL. LAB. CODE § 226)**<br>5. **Waiting time penalties (CAL. LAB. CODE § 203)**<br>6. **Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)**<br>7. **Civil penalties under the Private Attorneys General Act of 2004 (CAL. LAB. CODE §§ 2698, *et seq.*)** |

**SUMMARY**

1. Plaintiff Jason Altenhofen worked for Defendant Southern California Gas Company (SoCalGas) as a welding inspector and was charged by SoCalGas with monitoring and inspecting pipeline projects.

2. The nature of Altenhofen's working relationship with SoCalGas is that of an employer-employee, and he is entitled to the benefits of an employee under the FLSA and California law.

3. SoCalGas paid Altenhofen and Putative Class Members (defined below) an hourly expense reimbursement[1] tied to hours worked, which functioned as remuneration for hours worked. By failing to include them in Altenhofen and Putative Class Members' overtime rate, SoCalGas diluted Altenhofen and Putative Class Members' overtime rates.

4. SoCalGas also paid Altenhofen and Putative Class Members a daily per diem which was tied to number of days worked. The daily per diem did not depend on the amount of actual expenses incurred by Altenhofen and Putative Class Members.

5. These payments represented compensation that is primarily for the benefit and convenience of Altenhofen and Putative Class Members. The FLSA and the California wage acts require this type of compensation be included in the calculation of inspectors' regular rates for overtime purposes.

6. Because the expense reimbursement and per diem were not included in calculating these workers' regular rates of pay, Altenhofen and Putative Class Members were not properly compensated at their full overtime rates—as defined by the FLSA and California wage laws—for the overtime hours they worked.

7. Altenhofen brings this class and collective action to recover the unpaid overtime wages and other damages owed to himself and other hourly workers like him.

8. Altenhofen seeks back wages, liquidated damages, attorney fees, costs, and all other remedies available under the FLSA and California law.

---

[1] SoCalGas also referred to these hourly payments as equipment pay or vehicle allowance.

**JURISDICTION & VENUE**

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves a federal question under the FLSA, 29 U.S.C. § 216(b).

10. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

11. The Court has supplemental jurisdiction over any state law class pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because SoCalGas is headquartered in this District and Division.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Altenhofen worked for SoCalGas in this District and Division.

**INTRADISTRICT ASSIGNMENT**

14. Altenhofen worked for SoCalGas in Adelanto, San Bernardino County, California.

15. This matter therefore may be properly assigned to the District's Eastern Division.

**THE PARTIES**

16. Altenhofen worked for SoCalGas as a Welding Inspector from approximately February 2017 to April 2018.

17. Altenhofen's consent to be a party plaintiff is attached as Exhibit A.

18. The inspectors employed by SoCalGas include chief inspectors, welding inspectors, coating inspectors, utility inspectors, and safety inspectors.

19. Altenhofen brings this action on behalf of himself and all other similarly situated inspectors under the collective action provisions of the FLSA. *See* 29 U.S.C. §216(b).

20. The FLSA class is properly defined as:

> **All inspectors who worked for of Southern California Gas Company on an hourly or day rate basis in the past three years. (the "FLSA Inspectors")**

21. Altenhofen also seeks class certification of a class under FED. R. CIV. P. 23 under the California Labor Code, defined as follows:

PARMET PC

> **All inspectors who worked for Southern California Gas Company in California on an hourly or day rate basis in the past four years. (the "California Inspectors")**

22. Together, the FLSA Inspectors and California Inspectors are referred to as the "Putative Class Members."

23. SoCalGas is a California corporation with its headquarters and principal place of business in Los Angeles, California.

24. SoCalGas may be served by serving its registered agent for service of process, **Corporation Service Company d/b/a CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833**, or by any other method authorized by law.

## COVERAGE UNDER THE FLSA

25. For at least the past three years, SoCalGas has been an employer within the meaning of the section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26. For at least the past three years, SoCalGas has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

27. For at least the past three years, SoCalGas has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as construction equipment, laptops, and cell phones – that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

28. For at least the past three years, Altenhofen and the FLSA Inspectors were engaged in commerce or in the production of goods for commerce.

## FACTS

29. SoCalGas is a natural gas provider that distributes, transmits, and stores natural gas throughout California.

30. SoCalGas is the primary provider of natural gas to Southern California.

31. Altenhofen worked for SoCalGas from February 2017 to April 2018 as a welding inspector.

32. Altenhofen performed work for SoCalGas in Adelanto, California and Goleta, California.

33. SoCalGas paid Altenhofen by the hour during the relevant time period.

34. SoCalGas typically scheduled Altenhofen and the Putative Class Members for 12- to 14-hour shifts for up to 7 days a week for weeks at a time.

35. Altenhofen and the Putative Class Members often worked more than 12 hours in a day.

36. As a result, Altenhofen worked anywhere from 70 to 84 hours in a typical workweek.

37. In addition to his hourly rate, SoCalGas paid Altenhofen approximately $241.00 each day he worked that was intended to reimburse her for things like lunch, rent, and other normal everyday expenses.

38. SoCalGas also paid Altenhofen approximately $20.00 each hour he worked that was intended to reimburse him for his equipment and approximately $10.00 each hour he worked that was intended to reimburse him for his vehicle.

39. The per diem and expense reimbursements were intended to reimburse Altenhofen and the Putative Class Members for expenses he normally incurred for his own benefit and convenience.

40. For example, for the pay period beginning on November 4, 2017 and ending November 10, 2017, SoCalGas paid Altenhofen a daily per diem of $241.00/day, hourly equipment reimbursement of $20.00/hour, and hourly vehicle allowance of $10.00/hour:

| Company | Pay Period | Pay Freq | Assignment | Wage Code | Units | Rate | Gross Wages |
|---|---|---|---|---|---|---|---|
| Southern California Gas Company | 11/04/2017 - 11/10/2017 | Weekly | 32169 | Overtime Wages | 12.00 | 56.25 | 675.00 |
| Southern California Gas Company | 11/04/2017 - 11/10/2017 | Weekly | 32169 | Regular Wages | 36.00 | 17.50 | 630.00 |
| Southern California Gas Company | 11/04/2017 - 11/10/2017 | Weekly | 32169 | Per Diem | 7.00 | 241.00 | 1,687.00 |
| Southern California Gas Company | 11/04/2017 - 11/10/2017 | Weekly | 32169 | Mileage | 337.00 | 0.535 | 180.30 |
| Southern California Gas Company | 11/04/2017 - 11/10/2017 | Weekly | 32169 | Equipment | 36.00 | 20.00 | 720.00 |
| Southern California Gas Company | 11/04/2017 - 11/10/2017 | Weekly | 32169 | Vehicle Allowance | 36.00 | 10.00 | 360.00 |

41. But SoCalGas did not include the per diem and/or expense reimbursement when calculating Altenhofen's and the Putative Class Members' regular rate for overtime purposes.

Pl's Original Complaint — - 5 -

PARMET PC

42. Because the per diem and expense reimbursements were not used to reimburse Altenhofen and the Putative Class Members for expenses they incurred in the furtherance of SoCalGas's interest or benefit, those payments are actually disguised wages.

43. The per diem and expense reimbursements should be included in the regular rate calculations for overtime purposes.

44. As such, Altenhofen and the Putative Class Members were not properly compensated at their correct overtime rate for all overtime hours worked.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

45. Numerous inspectors have been victimized by this pattern, practice, and policy, which are in willful violation of the FLSA and California Labor Code.

46. Many of these employees have worked with Altenhofen and the Putative Class Members have reported that their regular rate did not include the per diem and/or expense reimbursements for overtime purposes.

47. Even if their precise job titles may differ, the Putative Class Members are all victims of SoCalGas's unlawful compensation practices and are similarly situated to Altenhofen in terms of relevant job duties, pay provisions, and employment practices.

48. Thus, from Altenhofen's observations and discussions with these inspectors, he is aware that the illegal practices or policies of SoCalGas have been imposed on a distinct group of its employees.

49. Altenhofen and the Putative Class Members receive per diem and/or expense reimbursements for expenses normally incurred for their own benefits, but SoCalGas does not include these payments in the calculation of regular rates for overtime purposes.

50. The Putative Class Members regularly work or have worked in excess of 40 hours during a workweek.

51. The per diem and expense reimbursements do not fall within the few and narrow regular rate exclusions of the FLSA or the California Labor Code.

52. SoCalGas's failure to include the per diem and expense reimbursements into the regular rate calculation for overtime purposes results from generally applicable policies or practices and does not depend on personal circumstances of the Putative Class Members.

53. The job specific titles or precise job responsibilities of the individual inspectors do not prevent class or collective treatment.

54. All the Putative Class Members, irrespective of their particular job requirements, are entitled to overtime compensation at the minimum rates required by by the FLSA and California law for all overtime hours worked.

55. Although the exact amount of damages may vary among the Putative Class Members, the damages can be easily calculated by the same or similar formula because all hours worked by the Putative Class Members were recorded by a time-keeper and reflected in SoCalGas's records.

56. Altenhofen has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

57. Like each Putative Class Member, Altenhofen has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

58. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

59. Absent a class and collective action, many Putative Class Members will not obtain redress of their injuries, and SoCalGas will reap the unjust benefits of violating the FLSA and the California Labor Code.

60. Further, even if some of the Putative Class Members could afford individual litigation against SoCalGas, it would be unduly burdensome to the judicial system.

61. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

62. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

63. Among the common questions of law and fact are:

PARMET PC

a. Whether SoCalGas employed the Putative Class Members within the meaning of the FLSA and the California Labor Code;

b. Whether SoCalGas's decision to exclude the per diem and/or expense reimbursement payments from the calculation of regular rates for overtime purposes violated the FLSA and the California Labor Code;

c. Whether SoCalGas's violations of the FLSA and the California Labor Code were made in good faith;

d. Whether SoCalGas's violations of the FLSA and the California Labor Code were willful; and

e. Whether SoCalGas's illegal pay practices applied to all Putative Class Members.

64. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

65. Altenhofen and the Putative Class Members sustained damages arising out of SoCalGas's illegal and uniform pay policy.

66. Altenhofen knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

67. SoCalGas's illegal pay policy uniformly deprived Altenhofen and the Putative Class Members of the premium overtime wages they are owed under federal and California law.

68. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA and the California Labor Code who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

69. Notice of this lawsuit should be sent to the FLSA Inspectors pursuant to 29 U.S.C. § 216(b).

70. The Court should certify the claims under the California Labor Code as a class under Rule 23 comprised of the California Inspectors;

71. The Putative Class Members are known to SoCalGas, are readily identifiable, and can be located through SoCalGas's records.

72. In sum, SoCalGas's failure to include the per diem and/or expense reimbursements into the calculation of the Putative Class Members' regular rates for overtime purposes results from generally applicable, systematic policies and practices, which are not dependent on the personal circumstances of the Putative Class Members.

73. Thus, Altenhofen's experiences are typical of the Putative Class Members' experiences.

### FIRST CAUSE OF ACTION—VIOLATION OF THE FLSA

74. Altenhofen incorporates all other allegations.

75. At all relevant times, SoCalGas was an enterprise engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

76. SoCalGas employed Altenhofen and the FLSA Inspectors.

77. SoCalGas's pay policy denied Altenhofen and the FLSA Inspectors overtime compensation at the legal overtime rates required by the FLSA.

78. Specifically, SoCalGas violated, and is violating, Section 7 of the FLSA by failing to include the per diem and expense reimbursement in the calculation of the regular rate for overtime purposes. 29 U.S.C. § 207(e)(2); 29 C.F.R. § 778.217(d).

79. As such, SoCalGas has failed to properly pay Altenhofen and the FLSA Inspectors overtime wages at one-and-one-half times their regular rates for all hours worked in excess of 40 hours per workweek.

80. SoCalGas's failure to pay Altenhofen and the FLSA Inspectors proper overtime violated the FLSA.

81. SoCalGas knew, or showed reckless disregard for whether, its conduct violated the FLSA.

82. Accordingly, Altenhofen and the FLSA Inspectors are entitled to recover their unpaid overtime compensation in an amount equal to the difference between the proper overtime rates and the rates actually paid, an equal amount in liquidated damages, reasonable attorneys' fees, costs, and expenses of this action from SoCalGas.

### SECOND CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW

83. Altenhofen incorporates all other allegations.

84. The California Labor Code requires that all employees, including Altenhofen and the California Inspectors, receive 1.5 times their hourly rate as overtime premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders.

85. Despite working over 8 hours a day as part of their normal and regular shift, Altenhofen and the California Inspectors did not receive the full overtime compensation at a rate not less than 1.5 times their proper regular rates for all hours worked over eight in one day.

86. The California Labor Code also requires that all employees, including Altenhofen and the California Inspectors, receive two times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders.

87. Although Altenhofen and the California Inspectors occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

88. The California Labor Code requires that all employees, including Altenhofen and the California Inspectors, receive two times the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Orders.

89. Although Altenhofen and the California Inspectors regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

90. This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Altenhofen and the California Inspectors to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

**THIRD CAUSE OF ACTION—FAILURE TO PROVIDE**

**COMPENSATION FOR MISSED MEAL AND REST PERIODS**

91. Altenhofen incorporates all other allegations.

92. In accordance with the mandates of California Labor Code sections 226.7 and 512, and applicable IWC Wage Orders, Altenhofen and the California Inspectors had the right to take two

uninterrupted 30-minute meal periods for each day they worked 10 hours per day and a 10 minute rest period for every four hours worked per day. CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders.

93. Although the California Labor Code requires that all employees, including Altenhofen and the California Inspectors, receive two, 30-minute meal-period breaks when employed for 10 hours per day, Altenhofen and the California Inspectors did not receive two meal-period breaks for each day worked, despite working shifts of 12 hours or more. CAL. LAB. CODE § 512; IWC Wage Orders.

94. As a pattern and practice, SoCalGas did not provide Altenhofen and the California Inspectors with meal-period breaks, and did not provide proper compensation for this failure as required by California law.

95. Although the California Labor Code requires that all employees, including Altenhofen and the California Inspectors, receive a 10-minute rest period for every four hours worked, Altenhofen and the California Inspectors did not receive any rest periods during their shifts of 12 or more hours. CAL. LAB. CODE § 512; IWC Wage Orders.

96. As a pattern and practice, SoCalGas did not provide Altenhofen and the California Inspectors with rest-period breaks, and did not provide proper compensation for this failure as required by California law.

97. Altenhofen and the California Inspectors are entitled to receive compensation, at their regular rate of pay, of one hour for each day they were denied their lawfully required meal- and rest-periods. CAL. LAB. CODE § 512; IWC Wage Orders.

98. SoCalGas's policy failed to provide Altenhofen and the California Inspectors with the legally mandated meal period breaks. Such a pattern, practice, and uniform administration of corporate policy as described herein is unlawful and creates an entitled to recovery by Altenhofen and the California Inspectors in a civil action, for the balance of the unpaid compensation pursuant to Labor Code sections 226.7 and 512, and applicable IWC Wage Orders.

**FOURTH CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS**

99. Altenhofen incorporates all other allegations.

100. California Labor Code section 226 requires SoCalGas to keep accurate records regarding the rates of pay for their California employees and provide that information to Altenhofen and the California Inspectors with their wage payment.

101. Because SoCalGas failed to pay Altenhofen and the Putative Class Members lawful wages, it did not maintain accurate records of Altenhofen and the California Inspectors' daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Altenhofen and the California Inspectors with their wages.

102. This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Altenhofen and the California Inspectors to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

### FIFTH CAUSE OF ACTION—WAITING TIME PENALTIES

103. Altenhofen incorporates all other allegations.

104. At all relevant times, SoCalGas was required to pay Altenhofen and the California Inspectors all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

105. As a result of SoCalGas's alleged California Labor Code violations, SoCalGas regularly failed to pay Altenhofen and the California Inspectors their final wages pursuant to California Labor Code sections 201 to 204, and accordingly SoCalGas owes waiting time penalties pursuant to California Labor Code section 203.

106. The conduct of SoCalGas, in violation of Altenhofen and the California Inspectors' rights, was willful and was undertaken by the agents, employees, and managers of SoCalGas.

107. SoCalGas's willful failure to provide Altenhofen and the California Inspectors the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

108. Therefore, Altenhofen and the California Inspectors who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

### SIXTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW

109. Altenhofen incorporates all other allegations.

110. SoCalGas has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) meal- and rest-period break wages; (4) accurate wage statements; and (5) waiting time penalties.

111. As a result of SoCalGas's failure to comply with federal and state law, SoCalGas has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

112. The relevant acts by SoCalGas occurred within the four years preceding the filing of this action.

113. On information and belief, SoCalGas has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Altenhofen and the California Inspectors of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

114. Altenhofen and the California Inspectors are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

115. Altenhofen and the California Inspectors are also entitled to permanent injunctive and declaratory relief prohibiting SoCalGas from engaging in the violations and other misconduct referred to above.

116. SoCalGas is also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

**SEVENTH CAUSE OF ACTION—CIVIL PENALTIES UNDER PAGA**

117. Altenhofen incorporates all other allegations.

118. Altenhofen and the California Inspectors are aggrieved employees within the meaning of California Labor Code section 2699.

119. As aggrieved employees, Altenhofen and the California Inspectors seek to recover of civil penalties against SoCalGas pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698, *et seq.*

120. SoCalGas has knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

    a. Failing to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Order 16-2001);

    b. Failing to provide compensation for missed meal and rest periods (Cal. Lab. Code §§ 226.7, 512; IWC Wage Order 16-2001);

    c. Violating record keeping requirements (CAL. LAB. CODE § 226);

    d. Unlawfully collecting, receiving, or withholding wages (CAL. LAB. CODE §§ 221, 225.5);

    e. Failing to pay wages promptly following termination of employment, or when due and payable (CAL. LAB. CODE § 203).

121. The civil penalties sought by Altenhofen and the California Inspectors include the recover of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

122. Altenhofen and the California Inspectors seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by Altenhofen and the California Inspectors pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

123. Altenhofen and the California Inspectors will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

124. Altenhofen provided notice to SoCalGas of its California Labor Code and IWC Wage Orders violations on February 21, 2020.

125. On the same date, Altenhofen submitted notice to the California Labor and Workplace Development Agency (LWDA) as required by PAGA.

126. Altenhofen's notice to SoCalGas and the LWDA advises them of his intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA if the LWDA declines to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations.

127. If the LWDA declines to investigate or prosecute, Altenhofen and the California Inspectors will pursue their PAGA claims in the course of this action.

128. Altenhofen and the California Inspectors had to retain counsel to file this action to protect their interests and to assess and collect the civil penalties owed by SoCalGas.

129. Altenhofen and the California Inspectors have incurred attorneys' fees and costs in prosecuting this action to recover under PAGA.

**RELIEF SOUGHT**

130. Altenhofen prays for judgment against SoCalGas as follows:

    a. For an order certifying a class action under Rule 23 for the purposes of the claims under California law;

    b. For an order certifying this case as a collective action for the purposes of the FLSA claims;

    c. For an order finding SoCalGas liable for violations of state and federal wage laws with respect to Altenhofen and all Class Members covered by this case;

    d. For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Altenhofen and all Class Members covered by this case;

    e. For a judgment awarding Altenhofen and all Class Members covered by this case their costs of this action;

    f. For a judgment awarding Altenhofen and all Class Members covered by this case their attorneys' fees;

    g. For a judgment awarding Altenhofen and all Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

    h. For all such other and further relief as may be necessary and appropriate.

Date:  February 24, 2020

Respectfully submitted,

By: ***/s/ Matthew S. Parmet***  _____
**Matthew S. Parmet**
(CSB # 296742)
matt@parmet.law
**PARMET PC**
340 S. Lemon Ave., #1228
Walnut, CA 91789
phone  713 999 5228
fax      713 999 1187

**Attorneys for Plaintiff**